Next case for argument is 24-2056, Leading Technology Composites v. MV2. Mr. Camacho, we're ready whenever you are. Do you have me down for five minutes for rebuttal? May it please the Court. Your Honors, there are many disputes about what happened before July 2020. But after July 2020, there are not many disputes. Before July 2020, there were competing positions. But in July 2020 is when we first made our first motion for summary judgment. We made our first motion for summary judgment and in that motion, we made abundantly clear that we did not think at least the four resisting clause of the preamble was limiting. We also didn't think it should be added to the first durable sheet limitation. That's the same position we took before the re-exam. To help put this case in context, classic litigation, MV2 requested re-exam. When MV2 requested re-exam? Just so I'll be clear, is your argument now just going to whether the preamble is limiting and the district court's observations that you had stipulated or conceded to that fact before? Is that what you're talking about here? Yes, I'm sorry. I'm generally talking about the preamble term, the four resisting clause. So sorry. And any comments I give today about the four resisting clause of the preamble are equally applicable to what has become a four resisting clause in the first durable sheet limitation, which didn't, it doesn't include a four resisting clause or at least it didn't, but now it did. We originally, we did not, we as the plaintiffs were not eager for a re-examination or a stay. We resisted a stay. But one of the reasons that MV2 proposed to stay the litigation, a significant request, was that the intrinsic record would be more developed and the court would get the benefit of the Patent Office's technical skills. And that's what happened. The intrinsic record was developed much more fully, over 2,000 pages. And during that record, we did not rely on the four resisting portion of the preamble as a claim limitation. Yes, the armor panel, concede that all day long. But we did. Counsel, I just want to get a handle on what evidence, if any, was pit before the court below in terms of the four resisting limitation. I understand that you're arguing to us that that limitation should not be limiting in the preamble and the like. But was there some evidence and if so, what was pit forth below with respect to the four resisting limitation? Yes, we argued as a backup that if the four resisting clause was construed as a limitation, it would be given its plain and ordinary meaning as allowed by the spec. And then I think your Honor's question was, what was the evidence? I think we listed nine things. We listed, we included deposition testimony of one of their... Before you get too far on the list, did you list those things in opposing their motion for summary judgment of non-infringement? And if so, where can we see that list as you presented it to the district court? I believe we did. I paused a little bit, Your Honor, because I wonder if we might have preemptively even addressed that as the contingency in our opening brief before the district court. You mean, because you moved for summary judgment of infringement. Yes. And they moved for summary judgment of non-infringement. Right. The question I guess I have is, how would the district court have been on notice that the evidence you're about to list for us was part of what she had to consider in evaluating their motion for summary judgment of non-infringement? Just if you could tell us where in the record we would see that. Okay. So you're saying when they cross-moved, I would have needed to have opposed that? I might be saying that, but I first just want to know, did you let the district court know this is our evidence as to why you should at minimum not grant summary judgment of non-infringement? I don't want to give you a wrong answer. I'm pretty sure we did, but I think there's a possibility that we might have referenced back to our opening brief because we were moving for summary judgment of non-infringement, I mean, of infringement, and that's what we might have done. So you're not sure? You can't point us to anything in the record that would answer that question at this point? Well, I will pause just a second and look. I don't have that at my fingertips, Your Honor. I will look at it for my rebuttal. I'm sorry for interrupting. That's okay. Can I just ask you a side question? Sure. And I'll give you the extra two minutes for the side question. Thank you so much. Because it's not really dealing with the issues. I just am interested in this case. A lot of the infringement allegations that you would arguably want to collect on were taken out of this case because of the 1498 issue. So you're going to have to go after the government for that. So based on my reading of the record, there's like really a very minuscule number of infringing devices that were sold to other than the government. Is that correct? I mean, even if you were to prevail in all regards with respect to this particular litigation, the numbers we're talking about are minuscule because you only had a small number – they only had a small number of sales to non-government entities. Am I right about that or wrong? No. You're very, very close. Just take issue just a tiny bit with the word minuscule because there was a determination made – the lower court did make a determination that there were 16 panels that were made to – that were private and even the one was not de minimis. But so far in the record – We're talking under 10,000 by my calculation. Maybe I'm wrong about that. No, I think that's probably right so far. So kind of why are we – I mean, why are we not litigating against the government for big dollars? Why are we here on this particular case? Well, the real answer to that – I think that's an unfair question. No, no. It's not unfair. I'll tell you. Probably the realistic answer is so far the district court's claim construction order. We're not going to fight two fronts. So we filed a request in an administrative proceeding for an adjudication before the government. And then a couple of months after the lower court's ruling, we got a letter that said, well, in light of the district court's order, we were stopping our analysis. So you just want to – and when you say you're – because the significance of the challenge, the district court's claim construction order, are you dealing – there are kind of two pieces to that. One is whether or not the preamble is limiting. And the other is her actual construction of resisting. Is it both of those? It's both of those. Yes. We would propose now. We would say, as we said below, that the four resisting clause should not be a limitation at all. And then, even if it is, it should be given its broadest – I mean, not be our – All right. I'm not precluding my friends from going further on other issues. But let's assume hypothetically that we were to agree with the district court on, one, that the preamble is limiting, and, two, on her claim construction. Where are we left with in this case? If you were to agree on both of those, then I do think that it was not – we seek correction that we were not ever afforded an opportunity to respond to this claim construction. Nobody proposed this – neither party proposed this construction. It's a narrow construction. It says that, basically, there has to be – the construction is a little confusing, but I think what the court is saying is there has to be – No, I understand. But, okay, if that's – We just didn't – we would get an opportunity. We should – And what does that opportunity look like? I mean, discovery is closed. Are you talking about making legal arguments based on the evidence that you've already submitted to the record? Or are you talking about – Not that we submitted to the record as much. But, yes, I'm not proposing that we need more discovery, per se. But we have discovery, and we have – we already have evidence that we would have marshaled before the court, and some of which we referenced in our brief, if we would have been given a chance to try to show an equal resistance between the edges and the middle. Can we come back to that evidence? Because I know I distracted you from answering Judge Cunningham's question. What evidence do you have that would create a genuine dispute of material fact under the district court's claim construction, if we were to affirm that construction? Here's what we have. We have – and those are the nine things that we – some of the nine things that we listed. We have a ballistic evidence from the Carty report, the report by Dr. Adam Carty. In the Carty report, he analyzes ballistic shootings of a panel that is of the same characteristics as the MV squared panel. Is it of the actual accused product? Not the actual accused, but in the – go ahead, Judge. Well, you said it's the same characteristics as the MV squared panel. How do we know that? Their expert, Dr. Carty, analyzed it, and he took into consideration the different – all the things that one would take into consideration, the geometric characteristics, the bonding matrix. He analyzed those based on evidence available to him, and he made it – and he observed the ballistics information between those two panels. But why didn't he go the step further and do the – I mean, I don't know if he – when he talked about what he was comparing it to, he said, I think he tried the patented invention, and then he talked about what the accused product – why didn't he do the testing on the accused product? It's just an odd kind of gap, I think, in the analysis here. Why – he could have easily done it, could he not? Was there something that precluded him from taking the accused product, examining the accused product, and saying and responding to the details of what we need to have here to prevail? Well, I would say this, Your Honor. For a very long time, we did not regard the preamble as limiting, so we did not view that as something that needed to be substantiated, or it could be the case we provided one panel and shooting it would destroy it, and we didn't know to what extent we might need to preserve that panel for other purposes. But I'm not exactly sure why he did not physically shoot the actual panel, except that we did not regard there to be a requirement to have to show – oh, the phrase is for resisting edge impact penetrations. That's a – Okay, but that goes back to my earlier discussion with you. Isn't that admission on your part that the evidence that you put on was geared towards the preamble not being limiting? And you answered me before because my concern was about a remand to, say, give you an opportunity. The evidence is the same. So that suggests to me that based on the evidence in the record, you couldn't put together an argument with respect to why there's an issue of material dispute. Thank you, Your Honor. The evidence wouldn't be the same because in the one – if you look at our opening summary judgment – Just on that point, it wouldn't be the same, but is it in the record? We have it. I don't think it's in the record because we never attempted to prove that. So if we did a remand to give you another opportunity, you would have to open discovery? I'm so sorry. We're – two ships crossing in the night. We would not have to reopen discovery. We just didn't marshal it before – we didn't marshal everything before the district court to try to show any quality of resistance. Is it in the record? We showed resistance. Is it in the record? It is in the record. So can I get clarification on this, counsel? What evidence did you actually pit before the district court in terms of proving infringement versus what evidence do you say you would have liked to have pit before the district court? I'm trying to understand that delta. I understand. Thank you for that. The delta – I don't know that there's as much delta in – the delta would have been in the explanation. For example, the ballistics reports that I was referring to in response to Judge Stark's question earlier, that's in the record, but we didn't take – we didn't argue that there's equality. In terms of these summary judgment motions, what evidence was presented in terms of those motions, the summary judgment motion of infringement or the summary judgment motion of non-infringement, versus what you're saying is evidence you would have liked to have pit for in light of the district court's claim construction? I'm assuming that there – it's a difference there. Right. It's not the same evidence. No, it's not the same evidence. But, for instance, we didn't explain different parts of the Cardi report, of the Adam Cardi report. But if we would have had a chance to have explained it, we would have explained it. So we never provided any argument to try to meet the district court's – what we would consider a surprise construction. So the evidence is – we would say most of it's still actually in the Cardi report. We just didn't shine a light on it. But we did point to that in our briefing before this court. Did you ask – did you say anything to the district court after her new claim construction? Did you go back and say, hey, can we have a new opportunity since this caught us off guard, to make these arguments to you? That's what we – the court – we would have, but the court – this inner final judgment. That's why – that's why what's critical to understand here is we're appealing – we're appealing the most recent summary judgment, the summary judgment. So when the court made that motion, she dismissed – she essentially dismissed the case and said, no, we didn't have an opportunity to even go back before the court. And we knew this would turn on claim construction. So we're not going to make a motion for reconsideration on claim construction. We didn't think it moved to that level of error. So we're before you to help what we would say. I'm struggling with why we should, if this is our reasoning, give you another chance. At the summary judgment stage, both sides seem to have proposed what the construction should be if the preamble was going to be limiting. That happened, right? You all knew there was going to be additional claim construction at summary judgment. You didn't want it, but you knew that was going to happen, correct? I did want it, yes. You did want it, but it didn't go the way you wanted. But the other side put forward a proposed construction, which I think at JA-65 was that the edge limitation be a limitation and mean preventing complete penetrations at the edge and requiring ballistic testing to prove, right? That's what they argued. I think so. So why didn't that at least give you notice and therefore opportunity and indeed an incentive to come forward with this explanation of Dr. Carty or any other evidence? You had that chance, and why should we give you another chance just because the district court didn't go as far as they wanted but went further than you wanted? Your Honor, just to be clear, we did provide that evidence. As a matter of fact, if you were to read the structure of our opening brief, we actually led presuming maybe this would be a limitation, but just given it's Phillips plain and ordinary meaning. And we introduced evidence. That's in support of your motion. Yes. But you think the district court should have understood was also in opposition to theirs. Yes, I can check that on the rebuttal. But that was my understanding is to save resources for the district court. We didn't want to repeat. Let me just make sure I understand your position. If we were to give you another chance on remand, there is other evidence in the record that you would want to further explain or no. But now it seems like you were telling me it's all already, the district court already has all of it. It's not that the district court doesn't have the evidence to show equality of resistance between the medial portion and the edge. But we have it in discovery. We've just never been able. We've never had it. We would never. We never. So you didn't put that in front of her. Okay, not. And I guess my question remains. Then why didn't you when you knew they were asking for that construction? Didn't you already have a chance to do that? Why should we give you a rerun? Okay. So we do feel like we put in evidence to rebut M.V. Squared's proposed construction that they thought it either would have. It would be limiting in some regard. We did provide that evidence, and we included things like deposition testimony of Keith Harrison where he admitted that it works. He admitted that it resists. We already included that. We led with that. But then the court said, well, this is to prove a different point, that there has to be equality of resistance, which we would say is not justified by the specification, and there's no evidence before us for that. It looks like I'm out of my time. You're way over time, but we have a lot of questions. So we'll restore some rebuttal. Good morning, Your Honor. May it please the court. My name is James Gallaudet. I represent M.V. 2. With the court's indulgence, I'd like to kind of start at the end with the discussion. I'm hoping you will because we've narrowed this down to kind of the questions we are asking, so you can tell that's what we want to know.  Why shouldn't they be allowed a do-over, and what would the do-over look like if they were allowed a do-over? Yes, Your Honor. And I want to give a little context for this because, as LTC mentioned, they filed an initial summary judgment motion in 2020 where they said there was a claim construction dispute about the preamble. Now, we think part of that was manufactured, trying to reverse course on what they'd already agreed to, and part of it was real. What does resist edge impact penetrations mean? So they'd known about it for years. Now, come 2023, their second motion, not only do they raise the same issue, they also specifically recognize that the court could go one of three ways. In their brief, they specifically say the court could agree with us that it's not a limitation, the court could interpret it like we think they should, extremely broadly, or it could take a more narrow construction. So the idea that they were somehow surprised just doesn't hold water here, especially when the judge went to their own specification and pulled the words out. It's difficult to imagine a circumstance where a patent owner could say they were surprised by the judge looking at the specification, even more so here, where LTC specifically directed the court to the specification. Yes, Your Honor. Counsel, for the moment, maybe assume that we're agreeing that the preamble is limiting and assume for the moment we agree with the district court's claim construction. With that in mind, the part that I still feel like I haven't gotten a clean answer on is what evidence was before the district court with respect to these respective summary judgment motions that happened? Is that something you can answer? Absolutely, Your Honor. Okay, go for it. I think the court's opinion deals with this very well and accurately. If we look to what Judge Blake referred to, it was essentially that LTC had given up on presenting evidence. And if you look at their reply brief at page 23, they list the items kind of in trying to get- Reply brief here? Yes, Your Honor. Yes, so the yellow brief page 23. Yes, Your Honor. So they go through a list of supposed evidence that they presented at the lower court. Now, again, this is the exact evidence that the district court dealt with. Most of it has nothing to do with resisting edge impact penetrations under the judge's construction. LTC offers, you know, very broad generalizations. Well, we admitted armor panels are for resisting penetrations. As if that says something- So just kind of following up on what you're stating here, counsel, you indicate most of it doesn't have to do with the four resisting limitation. Can you point out on page 23 which, if any, have to do with the four resisting limitation? I would agree with Judge Blake that the only items in here which could be relevant were the email by Harrison, number six. Potentially the deposition by Harrison, number seven. And that's really it. Is Dr. Cardi listed here? No, Your Honor. LTC presented no evidence from Dr. Cardi. Dr. Cardi's name didn't come up in their renewed summary judgment motion. Not in their affirmative motion or in their opposition to you? Not to the best of my knowledge, Your Honor, and I believe that's what district court recognized as well. And we, you know, we scrutinized it at the time. And, you know, this was, you know, essentially LTC putting their chips on a very broad construction. She does say that. At Appendix 74, she says, notably, LTC does not cite the expert report from Dr. Cardi. Yes, Your Honor. In its summary judgment briefing to support an argument. Yes, Your Honor. But the question remains, then, if Judge Cunningham is satisfied with the answer. They got a claim construction that precisely was not on the table before she ruled. Does that open up the door to them being able to take stuff that's in the record and recast it for argument purposes to respond to the district court's new claim construction? I don't believe it does, Your Honor. Under O2 and its progeny, including level sleep, I don't believe that a new claim construction, its summary judgment, is grounds for reopening the record or producing new evidence. And I think that's the settled law on the subject. What about the Fourth Circuit case of Moore that was cited? Well, interestingly, Moore and Mickelson, which I think were both cited in the recent Rothschild versus Coca-Cola, those are sua sponte summary judgment decisions. So there was no motion before the court. And so the courts in both Moore and Mickelson found that that was surprised, is my understanding, Your Honor. Okay. But I'm not sure that that's a dispositive distinction. It's maybe an important one. Here the argument, I think, is the construction was in essence sua sponte because it wasn't what either side proposed. And so under the Moore Fourth Circuit standard, they would argue they were not on notice that they had to come forward with all of their evidence that was responsive to this sua sponte construction. Why would that not be the right way to analyze this? Well, I would argue that that would cut against this court's precedent already. But more so, I think it's really the nature of the surprise. If you can say truly we were surprised, this came out of nowhere. But in a claim construction setting, Your Honor, I think that would go more to whether or not the claim construction was correct. If a claim construction was truly so unforeseeable, then I think it would raise questions about to whether or not under a de novo review, whether it was correct rather than whether it should be considered a surprise. And we're going to give the patent owner another chance here. And I think here it's instructive that LTC did present that evidence in its first summary judgment motion in 2020. It presented expert. And then it made a conscious decision, still recognizing that the court could go any number of ways to radically change their approach and stake it all without any expert testimony, without any expert report, nothing to tie the two together. And if I may just briefly, Your Honor, explain why this would be a fruitless exercise. LTC characterizes what these test results are, but they don't talk about the fact that these tests were on a limited number of panels during the development process before the patent was even filed. Those armor panels were twice as thick. They had twice the aerial density. And LTC could not even say what the edge trim on those panels was. So there's no connection between the panels that were tested and the panels that LTC supposedly now says are similar to MV squareds. So there's no way to connect the dots here. And this is what went into a lot of our briefing on excluding the expert in the expert report, which the judge didn't decide on, Your Honor. Can I just add to that? On the record here, leaving aside your alternative basis for affirmance, you also had other basis for summary judgment, right? And that the judge didn't feel the need to go into because of her disposition here. Absolutely, Your Honor. And I believe you're referring to the less than one inch feature, which is clearly not present in the remaining commercial panels, which, as Your Honor noted, you're talking about $6,500 in damages. And you asked whether it was minuscule. In the context of the litigation that has gone on since the 1498 motion, $6,500 is certainly minuscule and does beg the question of why we keep pursuing this. I'll say one reason is that the U.S. government is going to be able to argue in validity like we haven't been able to do in this case. But let me, since we're on a sideline, but we're your friend in it, and if you're comfortable, if you, you know, you can cite us to anything in the record, I'm not sure it's there. In the 1498, that's one difference in validity. But what is the impact? I mean, I think they're concerned about the claim construction here. And if we were to affirm that the preamble is limiting and if the court's claim construction is right, are they still left with infringement arguments as they're suggesting they would have put on here if they had known the claim construction? Would those be right for 1498 review? And would those be the same as they would make in this case? Do I understand, if they were to pursue against the government, Your Honor? Yeah, I think if they pursue against the government, there's a number of difficulties. Perhaps they could overcome it. Perhaps they could shoot the panel, which we literally gave them a test panel. LTC has a ballistic testing facility. They could have shot that panel. But just to get back to our case, because I don't want to go too far astray, and I recognize that I'm the one that led you astray. But with respect to this case, Dr. Carty had the opportunity to test your device.  And he did not do that. Absolutely. And why was that necessary? Does his testimony with regard to the similarity of your device and their patented device obviate the need for them to have done actual testing? Or was it what he said sufficient? Not according to all of the extrinsic record or the extrinsic evidence in this case. All of the—at least two out of the three inventors testified you needed ballistic testing to show resisting ballistic edge impact penetration. Our expert, with decades of experience specifically in the armor industry, said you need ballistic testing. It's just—it's too unpredictable of an event. So, counsel, I want to say that opposing counsel argued that there was some testing done. I don't know exactly how you phrased it. Something similar? Yes. Made it clear it wasn't actually the Q's product. Can you respond to what your—what's your response to that testing that he points to? The testing that—the only testing that they produced for us or ever in this case had to do with testing that was done prior to LTC's application for patent, which was in the testing and evaluation trying to figure out how they could do this and what they would do. Those tests—again, so you've got what we'll call three sets of panels in this case. You've got those panels that were tested. You've got LTC's Mark VI panels that they compared MV2's test panel to. The expert took Mr. Coltrane's word for the fact that he didn't see any distinctive difference, but, in fact, the panels that were tested were quite different, twice the thickness, twice the aerial density, and, critically, LTC could not tell us what the edge trim was on those test panels. So it's really a black box, Your Honor. Can I ask you on the actual construction itself and whether the preamble is limiting? The blue brief at 35 says this. I'd just like the response. To permit an alternate result, that is to treat this preamble as limiting, would allow a user to make armor panels that include every feature recited in the lengthy body of Claim 7 but avoid infringement by simply contending that they are used for something else, such as to help avoid wear and tear. Yes, Your Honor. Is that correct? No, Your Honor. I believe I'm in my rebuttal time, but I just— In response to your question, Your Honor, of course. This is not an intended use case. We've never argued that it's an intended use. This is not like TomTom literally when the preamble said for use. It is a functional limitation. So the infringement is not just saying, or the lack of infringement is not just saying, we're not using it for that. It's we don't have that feature. You have to prove that we have that functional feature, which this— I think this court dealt with very well recently, and the judge cited Liberty Ammunition. A functional limitation, we've got to find a baseline. It's got to be something you can prove. It can't just be a nebulous idea. You haven't touched on your— I haven't, Your Honor. We're more than happy to rest on the briefs on that, if that's your— On the cross appeal? Very good, Your Honor. Yeah, conditional cross. Thank you. Thank you. We'll restore two minutes of rebuttal. I think the main thing I'd like to confirm, and just to do a bit of a level reset, is that the re-exam, the Patent Office never regarded this, never regarded the preamble as a limitation, not the for resisting clause. We never relied on it as a limitation throughout a lengthy, protracted re-exam, where if there were ever a time, that would have been it. We were under the BRI standard, and that could have been a narrowing benefit to us. We did not do that. We asked the court to revisit claim construction. The court did revisit claim construction. All of the arguments were made about what the claim construction should be, and this is a lengthy claim that defines a structurally complete invention. And that being the case, and I will touch on one thing that my friend closed on, is he talked about how supposedly important it was that testing happened. That never happened. The court didn't rule on invalidity until later. When they served their invalidity contentions, there was certainly no evidence in any art of anything actually resisting edge impact penetration, certainly not any narrower than one would think. And that was also not included in the re-examination request, and the Patent Office certainly didn't actually show that any prior art actually resisted or shot panels. But why wouldn't there have been testing to prove up the infringement case? I'm sorry, Your Honor, I didn't hear that. Why wouldn't you have put in testing to prove up the infringement case? Your Honor, because this is an apparatus claim, and infringement is shown by showing that the elements are met, not that the – I mean, all we would need to show, the specification doesn't require – there's no disavowal, there's no lexicography. It's for resisting, and we did. Here's the answer to – I'm sorry, Your Honor, it was in the confidential appendix. I was searching the wrong one. And it's in the confidential appendix at J – oh, goodness. It's what we marked on page 49 of our opening brief, Your Honor, where we list the evidence. The MV squared email from Keith Harrison, the Harrison deposition testimony, the ballistic testing evidence, MV squared's expert's admissions that its panels provide at least some resistance, which is what we thought we were up against, MV squared's response to its RFQ, MV squared's admission. We served an RFA on this. Just to be clear, are we talking about what you raised in your motion? Yes, we are, yes. But not – you're not talking about what your objection or your response to their motion was? I wasn't able to put my finger on, because I don't know if we put that whole brief in the record. I don't know if I was able to put my finger on referring back, but I think what we did for judicial economy, because the court had page limits for both people, is we referred back to our opening brief, and we figured since we had listed this information in our opening brief, that it would be the same as whether we included in our response to their cross-motion. Am I over? Yes. Thank you. Anything else? Thank you. Thank both sides, the cases. Thank you.